UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
AJAMU UWADIEGWU,

                           Plaintiff,

      -against-

DEPARTMENT OF SOCIAL SERVICES OF THE
COUNTY OF SUFFOLK, JOHN F. O'NEILL,
Acting DSS Commissioner, Individually and in his
Official Capacity, the COUNTY OF SUFFOLK,
JOHN HARDER, and certain caseworkers and/or
employees of the County of Suffolk, and/or DSS,
currently unknown but identified herein as John Does
1-3,

                           Defendants.

----------------------------------------------------------X

MEMORANDUM AND ORDER

CV 14-3219

(Wexler, J.)

APPEARANCES:

    RAY, MITEV & ASSOCIATES
    BY:   John W. Ray, Esq.
            Vesselin Venelinov Mitev
    Attorneys for Plaintiff
    122 North Country Road
    Miller Place, New York 11764

    DENNIS M. BROWN, Suffolk County Attorney
    BY:   Christopher Gatto, Esq., Assistant County Attorney
    Attorney for Defendants
    H. Lee Dennison Building
    P.O. Box 6100
    100 Veterans Memorial Highway
    Hauppauge, New York 11788

WEXLER, District Judge:

Before the Court is Defendants' motion to dismiss Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the motion. For the following reasons, Defendants' motion is granted.

## BACKGROUND

This case arises out of two separate Family Court actions in which the Plaintiff, Ajamu Uwadiegwu ("Plaintiff"), was alleged to have neglected his two minor children, A.U., Jr. and A.U., by engaging in drug use and domestic violence with the children's mother on several occasions. (Gatto Decl., Ex. A, E.)[1] Defendant Suffolk County Department of Social Services ("DSS") filed the initial Petition for Neglect on June 14, 2012.[2] (Gatto Decl., Ex. A.)

A hearing on the DSS Petition for Neglect was held on June 15, 2012. (Gatto Decl., Ex. B.) In its Order dated that same day, the Family Court took a negative inference based on

---

[1] The exhibits attached to the Declaration of Christopher Gatto include two Petitions for Neglect filed against Plaintiff as well as several Orders issued by the Family Court. Although not attached to the Complaint, the Court may consider these documents nonetheless as they are "incorporated in the complaint by reference," and are "documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs. Corp. v. Subaru of Am., Inc., 435 F.3d 119, 122 (2d Cir. 2005) (citation omitted). They are also properly considered as "matters of which judicial notice may be taken." Kalyanaram v. Am. Ass'n of Univ. Professors, 742 F.3d 42, 44 n.1 (2d Cir. 2014); see also Graham v. City of New York, 869 F. Supp. 2d 337, 343 (E.D.N.Y. 2012) ("Records of prior litigation are facts of which judicial notice may be taken.").

[2] The initial Petition for Neglect pertains to A.U., Jr. and a sibling minor, A.A., who appear to share the same mother. A.A. does not appear to be Plaintiff's child. In addition, although only the children's mother is named in the caption of the initial Petition for Neglect, Plaintiff is named as a co-respondent throughout the Petition and the subsequent Orders that stem from the Petition pertain to Plaintiff as well as the children's mother. (Gatto Decl., Ex. A.)

Plaintiff's refusal to take a drug test and noted that Plaintiff left court prior to the case being heard. (Gatto Decl., Ex. B.) The Court ordered the immediate removal of A.U., Jr. and A.A. to foster care and directed that there be no visitation as it would be detrimental to the best interests of the children. (Gatto Decl., Ex. B.)

By Order dated July 27, 2012, Plaintiff consented to the entry of a finding of neglect based on the incidences described in the neglect petition. (Gatto Decl., Ex. C.) The Family Court entered a finding of neglect against Plaintiff and directed that the children were to remain in foster care. (Gatto Decl., Ex. C.) The Family Court also directed Plaintiff to obtain a substance abuse evaluation and to attend and participate in both a parenting skills program and a domestic violence prevention program. (Gatto Decl., Ex. C.) Finally, the Family Court ordered that visitation was to be supervised by DSS. (Compl. ¶ 19; Gatto Decl., Ex. C.)

The Family Court issued another Order on January 15, 2013, by which it returned custody of A.U., Jr. and A.A. to their mother. (Gatto Decl., Ex D.) In that Order, the Family Court explicitly stated that the children were to have no contact with the Plaintiff. (Gatto Decl., Ex. D.)

On April 3, 2013, DSS filed a second Petition for Neglect against Plaintiff, this time with respect to the minor child A.U. (Gatto Decl., Ex. E.) The Petition alleged that Plaintiff had failed to undergo a substance abuse evaluation and to attend and participate in both a parenting skills program and a domestic violence prevention program, as ordered by the Family Court in July 2012. (Gatto Decl., Ex. E.) For that reason, DSS alleged that A.U. would be at risk of harm if he were to remain in Plaintiff's care. (Gatto Decl., Ex. E.)

By Order dated May 7, 2013, Plaintiff consented to an order of derivative neglect being entered with respect to A.U. (Gatto Decl., Ex. F.) A.U. was released into the custody of his

mother and Plaintiff was again ordered to obtain a substance abuse evaluation and to attend and participate in both a parenting skills program and a domestic violence prevention program. (Gatto Decl., Ex. F.) The Family Court further ordered that DSS shall provide supervised visitation for Plaintiff with A.U. (Gatto Decl., Ex. F.)

Plaintiff alleges that DSS failed to provide him with supervised visitation with his children, as ordered by the Family Court. (Compl. ¶ 22.) Plaintiff further alleges that instead, on or about July 8, 2013, DSS and Defendant John Harder facilitated and assisted in the surreptitious relocation of A.U., Jr. and A.U. to Jackson, Mississippi without his knowledge or consent. (Compl. ¶¶ 22-25.) To this date, the minor children remain in Mississippi. (Compl. ¶ 22.)

Plaintiff commenced the within action on May 21, 2014, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his First, Fourth and Fourteenth Amendment rights by failing to provide him with court-ordered visitation with his children and by assisting or facilitating the relocation of his children to Mississippi. Plaintiff also asserts claims for municipal liability, violation of the New York State Constitution and violation of New York Social Service Law § 384-b[7][a]. Defendants now move to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted.

## DISCUSSION

I. <u>Legal Standard</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556

U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when the "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). As a general rule, the court is required to accept as true all of the allegations contained in the complaint. See Iqbal, 556 U.S. at 678; Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." Iqbal, 556 U.S. at 678-79 (citation omitted); see also Twombly, 555 U.S. at 555 (stating that the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. Iqbal, 556 U.S. at 679. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. Iqbal, 556 U.S. at 678 (quoting Twombly, 555 U.S. at 557).

II.  The Federal Claims

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. In order to establish a constitutional violation under § 1983, a plaintiff must demonstrate that: (1) the defendants were acting under color of state law; and (2) that the defendants' actions deprived the plaintiff of a constitutional or federal statutory right. See Graham, 869 F. Supp. 2d at 348 (citing Hayut v. State Univ. of New York, 352 F.3d 733, 743-44 (2d Cir. 2003)).

There is no dispute here that Defendants were acting under color of state law. However,

for the reasons that follow, the Court finds that Plaintiff has failed to state a claim for any violation of his rights. Since Plaintiff has failed to demonstrate any constitutional or federal statutory violation, the Court need not reach the issues of municipal liability or qualified immunity.

A.   Unreasonable Search and Seizure

In his Complaint, Plaintiff alleges that by relocating his children, Defendants violated his Fourth Amendment right to be free from illegal searches and seizures. (Compl. ¶ 40.) Defendants correctly move to dismiss this claim on the grounds that "Fourth Amendment rights are personal rights, which, like some other constitutional rights, may not be vicariously asserted." Tenenbaum v. Williams, 193 F.3d 581, 593 n.13 (2d Cir. 1999) (quoting Alderman v. United States, 394 U.S. 165, 174 (1969)). Any alleged seizure here occurred as to the minor children. See Kia P. v. McIntyre, 235 F.3d 749, 762 (2d Cir. 2000) ("[T]he Fourth Amendment applies in the context of the seizure of a child by a government-agency official during a civil child-abuse or maltreatment investigation."). Accordingly, only the children - not Plaintiff - may assert a violation of this right. See Southerland v. City of New York, 667 F.3d 87, 103 (2d Cir. 2012) ("A Fourth Amendment child-seizure claim belongs only to the child, not to the parent."), amended by, 681 F.3d 122 (2d Cir. 2012); Graham, 869 F. Supp. 2d at 355 ("While a Fourth Amendment claim may be brought by a parent on behalf of a child, parents do not have their own Fourth Amendment right to be free from a child's court-approved removal.").

Moreover, the Court notes that Plaintiff failed to oppose Defendants' motion on this ground. "Consequently, because plaintiff did not address defendant[s'] motion to dismiss with regard to this claim, it is deemed abandoned and is hereby dismissed." Hanig v. Yorktown Cent.

Sch. Dist., 384 F. Supp. 2d 710, 723 (S.D.N.Y. 2005) (collecting cases).

B. Due Process

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV § 1. "Choices about marriage, family life, and the upbringing of children are among associational rights the Court has ranked of basic importance in our society . . . rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect." Graham, 869 F. Supp. 2d at 349 (quoting M.L.B. v. S.L.J., 519 U.S. 102, 116 (1996)).

The Supreme Court has held that parents have a "fundamental liberty interest . . . in the care, custody and management of their child . . . ." Santosky v. Kramer, 455 U.S. 745, 753 (1982); see also Tenenbaum, 193 F.3d at 593 (same). "[D]istrict courts in this Circuit have repeatedly dismissed . . . due process claims where there is no allegation that the parents were ever deprived of custody over their children." K.D. v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 215 (citing cases); see also Daniels v. Murphy, No. 06-CV-5841, 2007 WL 1965303 (E.D.N.Y. July 2, 2007) ("[B]ecause plaintiff has failed to allege any conduct by . . . defendants that threatened plaintiff's interest in the custody of her child, the complaint fails to state a claim under § 1983 for a violation of plaintiff's . . . due process rights.").

However, the issue herein is not about the custody of a child. It is undisputed that the minor children were removed from Plaintiff's custody by the Family Court. While the Family

Court provided Plaintiff with visitation, only the children's mother was awarded custody.[3] Apparently recognizing that he is not the custodial parent, Plaintiff bases his due process claim on an alleged deprivation of his non-custodial visitation rights. (Compl. ¶ 54.)

Plaintiff alleges in his Complaint that Defendants violated his Fourteenth Amendment rights "when they unlawfully and in violation of Court Orders relocated his children, thereby depriving Plaintiff of his court ordered visitation, without due process." (Compl. ¶ 54.) However, Plaintiff fails to offer any case law - and the Court's independent research has not produced any - that establishes a non-custodial parent's fundamental liberty interest in visitation. See Young v. County of Fulton, 999 F. Supp. 2d 282, 286-87 (N.D.N.Y. 1998) ("The plaintiff has failed to set forth even one case which establishes that visitation, as opposed to custody is a constitutionally protected liberty interest of a parent who does not have custody."), aff'd, 160 F.3d 899 (2d Cir. 1998); see also Altayeb v. Brereton, No. 3:09CV1788, 2013 U.S. Dist. LEXIS 143153, at *13-14 (D. Conn. Oct. 2, 2013) (finding no case law "discussing the contours of a non-custodial parent's constitutional rights to visit a child who has been removed from the parent's home").

In an effort to save his claim, Plaintiff argues that, based on state law - specifically, § 1081 of the New York Family Court Act and New York Social Service Law § 384-b[7][a] - and the Orders issued by the Family Court, all of which mandate visitation, he has a liberty interest in

---

[3] Plaintiff argues in his Memorandum of Law in opposition to the within motion that Plaintiff only "lost custody of his children temporarily, as there was no order permanently dissolving his parental rights." (Pl. Mem. of Law 4.) However, the case law makes no distinction between a temporary loss of custody and a permanent termination of parental rights. It simply refers to "custody." Here, it is undisputed that Plaintiff does not have custody of his children.

his right to visitation with his children. (Pl. Mem. of Law 6.) However, "[t]he procedure mandated by state family law is not the benchmark for evaluating whether or not there has been a federal constitutional violation." Young v. County of Fulton, 160 F.3d at 902. A violation of state law does not give rise to a federal civil rights claim. See id. (citing Robinson v. Via, 821 F.2d 913, 922 (2d Cir. 1987). "The question presented [in a § 1983 action] is not whether . . . defendants violated state law, but whether they violated plaintiff's federal constitutional or statutory rights." Young, 999 F. Supp. 2d at 287 (citing Doe v. Connecticut Dep't of Child Abuse Servs., 911 F.2d 868, 869 (2d Cir. 1990)). Here, Defendants did not.

Because Plaintiff fails to demonstrate a deprivation of a constitutionally protected interest with respect to visitation, he fails to state a due process claim, either procedural or substantive. See Luber v. Ross, No. 1:03-CV-0493, 2006 U.S. Dist. LEXIS 951, at *11-12 n.9 (N.D.N.Y. Jan. 5, 2006) (finding that interference with visitation rights is not a valid due process claim because "[a]s a non-custodial parent [Plaintiff] does not have a fundamental liberty interest in his visitation rights"). Accordingly, Defendants' motion is granted and Plaintiff's procedural and substantive due process claims as they relate to visitation are dismissed.

C. Right to Intimate Association

The right to intimate association "guarantees an individual the choice of entering into an intimate relationship free from undue intrusion by the state." Sanitation & Recycling Indus. v. City of New York, 107 F.3d 985, 996 (2d Cir. 1997) (citing Roberts v. United States Jaycees, 468 U.S. 609, 617-18 (1984)). The Supreme Court has extended this right to relationships that "attend the creation and sustenance of a family - marriage, childbirth, the raising and education of children and cohabitation with one's relatives." Sanitation & Recycling

Indus., 107 F.3d at 996 (quoting Roberts, 468 U.S. at 619).

As the Second Circuit has noted, "[t]he source of the intimate association right has not been authoritatively determined." Adler v. Pataki, 185 F.3d 35, 42 (2d Cir. 1999). "The Supreme Court has recognized a right of association with two distinct components - an individual's right to associate with others in intimate relationships and a right to associate with others for purposes of engaging in activities traditionally protected by the First Amendment, such as speech and other expressive conduct." Id. (citing Roberts, 468 U.S. at 617-18). Accordingly, the right of intimate association appears to "derive[] from both the First and Fourteenth Amendments." Lowery v. Carter, No. 07 Civ. 7684, 2010 U.S. Dist. LEXIS 113933, at *6 (S.D.N.Y. Oct. 21, 2010) (citing Roberts, 468 U.S. at 617-19) (additional citation omitted).

"Where a plaintiff is allegedly retaliated against for the First Amendment activities of a family member and asserts a claim based on intimate association, the courts in this Circuit have considered the claim as deriving from the First Amendment." Agostino v. Simpson, No. 08-CV-5760, 2008 U.S. Dist. LEXIS 93094, at *31 (S.D.N.Y. Nov. 14, 2008) (citing cases); see also Licorish-Davis v. Mitchell, No. 12-CV-601, 2013 U.S. Dist. LEXIS 71917, at *19 (S.D.N.Y. May 20, 2013) (noting that courts have "at times analyzed the right to intimate association as one emanating from the First Amendment"); Garten v. Hochman, No. 08 Civ. 9425, 2010 WL 2465479, at *3 (S.D.N.Y. June 16, 2010) ("Courts in this circuit have acknowledged that a First Amendment right to intimate association is implicated where a plaintiff is allegedly retaliated against for the First Amendment activities of a family member."). "Where the intimate association right at issue is tied to familial relationships and is independent of First Amendment retaliation concerns, however, the Second Circuit has employed an analysis under the framework

of the Fourteenth Amendment right to substantive due process." Garten, 2010 WL 2465479, at *4 (citing cases); see also Patel v. Searles, 305 F.3d 130, 135 (2d Cir. 2002) (stating that the right to intimate association receives protection as "a fundamental element of personal liberty" grounded in substantive due process under the Fourteenth Amendment); Lowery, 2010 U.S. Dist. LEXIS 113933, at *6 ("When the right of intimate association does not implicate any First Amendment speech or retaliation concerns . . . the court must analyze the case exclusively as a Fourteenth Amendment substantive due process claim.").

"[C]ourts within this Circuit specifically addressing the right to intimate association vis-a-vis parent-child relationships have analyzed the right under the principles of substantive due process rather than the First Amendment." Licorish-Davis, 2010 U.S. Dist. LEXIS 71917, at *19 (collecting cases). Accordingly, the Court will analyze Plaintiff's intimate association claim herein under the framework of Fourteenth Amendment substantive due process.

Substantive due process "provides heightened protection against government interference with certain fundamental rights and liberty interests." Kia P, 235 F.3d at 758 (quoting Washington v. Glucksberg, 521 U.S. 702, 720 (1997)). To state a claim for a violation of substantive due process, a plaintiff must demonstrate that the state action was "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 275 (2d Cir. 2011) (quoting Tenenbaum, 193 F.3d at 600). State action that is "incorrect or ill-advised" is insufficient to give rise to a substantive due process violation; rather, the action must be "conscience-shocking." Cox, 654 F3d at 275 (quoting Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995). "Only the most egregious official conduct can be said to be

arbitrary in the constitutional sense and therefore unconstitutional." Cox, 654 F.3d at 275 (quoting Tenenbaum, 193 F.3d at 600).

Plaintiff's Complaint fails to raise a substantive due process violation with respect to his intimate association claim. Plaintiff alleges that Defendants "encouraged and assisted in a surreptitious relocation of [his] children" to Mississippi, "procur[ing] taxpayer money through a voucher from the local government[4] that they obtained on behalf of the children's biological mother" to do so. (Compl. ¶¶ 22-23.) Plaintiff further alleges that Defendants' actions interfered with his "right to maintain an intimate family relationship with his children" and "deprived [him] of his children; of the ability to associate with his children; [and] of the ability to comfort and care for, be around, nurture, raise, and otherwise maintain a familial relationship with his children." (Compl. ¶ 42.)

As the Court has already noted, Plaintiff was not awarded custody of his children by the Family Court. "Where there is no actual loss of custody, no substantive due process claim can lie." Cox, 654 F.3d at 276 (citing cases). Moreover, even in cases where a custodial parent - which Plaintiff is not - has been deprived of custody, the Second Circuit has held that "[a]bsent truly extraordinary circumstances, a brief deprivation of custody is insufficient to state a substantive due process . . . claim." Id. (citing cases). This is because such deprivations do "'not result in the parents' wholesale relinquishment of their right to rear their children,' so they are not constitutionally outrageous or conscience-shocking." Id. (quoting Nicholson v. Scoppetta, 344 F.3d 154, 172 (2d Cir. 2003)).

---

[4] Plaintiff's Complaint does not clearly explain what this "voucher" is or how it was procured.

The same can be said here. None of the actions attributed to Defendants in Plaintiff's Complaint can be said to be "arbitrary, shocking or egregious." Nor did any of the actions complained of result in a "wholesale relinquishment" of Plaintiff's rights with respect to his children. The Family Court is the entity responsible for denying Plaintiff custody of his children, not Defendants. If Plaintiff takes issue with the decisions of the Family Court, he is free to challenge those in the appropriate forum - the Family Court. As Plaintiff points out, the Family Court did not terminate his parental rights. In fact, it granted him visitation. There is nothing preventing Plaintiff from traveling to Mississippi and exercising those rights.[5]

For the foregoing reasons, Plaintiff's Complaint fails to state a claim for a violation of his constitutional right to intimate association. Accordingly, Defendants' motion is granted and that claim is dismissed.

III. The State Law Claims

Having found that Plaintiff's federal claims fail as a matter of law, there is no longer any independent basis for federal jurisdiction in the within action. Although the Court has the discretion to exercise supplemental jurisdiction over plaintiff's remaining state law claims, see 28 U.S.C. § 1367(a), it declines to do so. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); Marcus v. AT&T Corp., 138

---

[5] On December 23, 2013, the Family Court vacated all Orders of Protection and related Orders previously granted against Plaintiff with respect to his minor children. As a result, Plaintiff's visitation with his children is no longer required to be supervised by DSS. (Compl. ¶ 30.)

F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

Accordingly, Plaintiffs' state law claims are dismissed without prejudice.[6]


IV.  Leave to Replead

The general rule is that "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795-96 (2d Cir. 1999) (quoting Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)). However, "[t]he problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). Leave to amend is therefore denied as futile.[7] See id. (citing Hunt v. Alliance N. Am. Gov't Income Trust, 159 F.3d 723, 728 (2d Cir. 1998)); see also Roth v. CitiMortgage Inc., 756 F.3d 178, 183 (2d Cir. 2014) ("Leave to amend need not be granted where the proposed amendment would be futile.").

---

[6] " Since [New York's CPLR § 205] allow[s] a plaintiff to recommence a dismissed suit within six months without regard to the statute of limitations,' plaintiff[] will not be prejudiced by the dismissal of [his state law] claims." Tishman v. The Associated Press, No. 05 Civ. 4278, 2007 U.S. Dist. LEXIS 85588, at *29 (S.D.N.Y. Nov. 19, 2007) (quoting Trinidad v. N.Y City Dep't of Corr., 423 F. Supp. 2d 151, 169 (S.D.N.Y. 2006)) (alterations in original) (additional citations omitted).

[7] Since Plaintiff's Complaint is dismissed without leave to replead, there is no need to reach the issue raised by Defendants with respect to improper service of the individual defendants, John F. O'Neill and John Harder.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted and Plaintiff's federal claims are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over the remaining state law claims and those claims are accordingly dismissed without prejudice.

The Clerk of the Court is directed to enter judgment accordingly and to thereafter close this action.

**SO ORDERED:**

Dated: Central Islip, New York
       March 11, 2015

s/ Leonard D. Wexler
LEONARD D. WEXLER
United States District Judge